IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Action No. 18-cv-1016-REB

BRINTON DANE CASTOLENIA, and
CHELSEA KAY SMITH, on behalf of Bridget Castolenia, deceased,

    Plaintiffs,

v.

NANCY BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

## ORDER AFFIRMING COMMISSIONER

**Blackburn, J.**

    The matter before me is plaintiff's **Complaint** [#1],[1] filed May 1, 2018, seeking review of the Commissioner's decision denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

    Plaintiff alleges she is disabled as a result of status post laminectomies, status post bilateral shoulder fractures, bicipital tendonitis, mild osteoarthritis of the right hip, major depressive disorder, general anxiety disorder, panic disorder, and post-traumatic

---

[1] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

stress disorder.  After her applications for disability insurance benefits and supplemental security income benefits were denied, plaintiff requested a hearing before an administrative law judge.  This hearing was held on April 4, 2017.  At the time of the hearing, plaintiff was 52 years old.  She has a high school degree with some college and past relevant work experience as a medical assistant.  She has not engaged in substantial gainful activity since at least February 1, 2012, her amended alleged date of onset.[2]

The ALJ found plaintiff was not disabled and therefore not entitled to disability insurance benefits or supplemental security income benefits.  Although the medical evidence established plaintiff suffered from severe impairments, the judge found the severity of those impairments did not meet or equal any impairment listed in the social security regulations.  The ALJ determined plaintiff had the residual functional capacity to perform a reduced range of light work with postural and environmental limitations and which did not require production-rate pace work.  Because this determination did not preclude plaintiff's past relevant work as a medical assistant as it was generally performed, the ALJ found her not disabled at step four of the sequential evaluation.  Plaintiff appealed this decision to the Appeals Council.  The Council affirmed.  Plaintiff then filed this action in federal court.

---

[2] As discussed below, plaintiff originally alleged an onset date of January 1, 1998.  Before the Appeals Council, plaintiff acknowledged that due to her failure to appeal a past denial of benefits, her onset date necessarily could be no earlier than February 1, 2012.  (Tr. 356.)  In addition, for purposes of Title II benefits, her date last insured by December 31, 2016.  (Tr. 80, 293.)

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2).  "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a quinquepartite sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe."  A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

> 4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform her past work despite any limitations.
>
> 5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(a)(4)(i)-(v).[3]  **See also Williams v. Bowen** 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. **Bowen v. Yuckert**, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show the claimant is capable of performing work in the national economy. **Id.** A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. **Casias v. Secretary of Health & Human Services**, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. **Hamilton v. Secretary of Health and Human Services**, 961 F.2d 1495, 1497-98 (10th Cir. 1992); **Brown v. Sullivan**, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. **Brown**, 912 F.2d at 1196. It requires

---

[3] Throughout this opinion, I cite to relevant sections of Part 404 of Title 20 of the Code of Federal Regulations, which contain the Commissioner's regulations relating to disability insurance benefits. Identical, parallel regulations can be found in Part 416 of that same title, relating to supplemental security income benefits.

more than a scintilla but less than a preponderance of the evidence. ***Hedstrom v. Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." ***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. ***Id.***

### III. LEGAL ANALYSIS

Plaintiff suggests the ALJ erred in (1) weighing various medical opinions of record; (2) failing to include greater mental health limitations in his residual functional capacity assessment; and (3) discrediting plaintiff's subjective reports of pain and functional limitation. She also claims the Appeals Council should have remanded based on new evidence submitted at that level. Finding no reversible error in any of these particulars, I affirm.

Plaintiff first objects to the relative weight the ALJ afforded two of the medical source opinions of record. She maintains the ALJ should have placed more reliance on the opinion of consultative examiner Dr. Mark Osborne, who examined plaintiff in November 2015. Dr. Osborne suggested no limitations on the number of hours plaintiff could sit, stand, or walk during a normal, eight-hour workday, nor on her ability to bend, stoop, squat, crouch, or crawl, but stated that she could lift and carry no more than five

5

pounds frequently and ten pounds occasionally[4] and could never reach overhead or perform other manipulative activities such as reaching, pushing, pulling, grasping, and fingering. (Tr. 475-476.) These limitations, which contemplate no more than sedentary work, would preclude plaintiff's past relevant work and thus undermine the ALJ's step four disability determination.

The ALJ gave this opinion "little weight," finding it both under-restrictive, insofar as the failure to place any limits on sitting, standing, or walking did not adequately account for plaintiff's hip and back impairments, and over-restrictive, in its proposed lifting restrictions. With respect to those restrictions particularly, the ALJ pointed to the treatment records of orthopedic surgeon Dr. Kim Furry as supporting a greater degree of functionality. In one particular at least, that reliance was misplaced. Although the ALJ characterized Dr. Furry's notes as stating that plaintiff's old humerus fractures "had healed well with good preservation of joint space" (Tr. 91), the record also indicated the fracture was "malunited" and with a "slight varus"[5] and suggested this might be one cause of plaintiff's pain[6] (Tr. 529-530).

---

[4] Although these figures are reversed in the report (i.e., suggesting plaintiff could lift and carry ten pounds frequently and five pounds occasionally), this appears to be a error in transcription, as one would expect that it is the lighter weight that can be managed frequently and the heavier only occasionally. (*See* Tr. 475.)

[5] "Malunion" occurs when " If the two ends of the broken bone are not lined up properly, the bone can heal with a deformity called a malunion." University of Michigan, Comprehensive Musculoskeletal Center, *Malunion Fractures* (available at: https://www.uofmhealth.org/conditions-treatments/cmc/fracture/malunion) (last accessed May 1, 2019). "A varus deformity is an excessive inward angulation (medial angulation, that is, towards the body's midline) of the distal segment of a bone or joint." Wikipedia, *Varus Deformity* (available at: https://en.wikipedia.org/wiki/Varus_deformity) (last accessed May 1, 2019).

[6] Dr. Furry also believed there was "some component of tendonosis in both shoulders" and noted evidence of a partial-thickness supraspinatus tear. (Tr. 529.)

Nevertheless, in the context of the record as a whole, this error undoubtedly was harmless.  *See Williams v. Chater*, 1995 WL 490280 at *2 (10th Cir. Aug.16, 1995) ("Procedural imperfection that does not affect a party's substantive rights is not a basis for reversal."); *Lumpkin v. Colvin*, 112 F.Supp.3d 1169, 1174 (D. Colo. 2015) ("[W]here [the] ALJ's opinion is otherwise amply supported by the record, error which does not prejudice [the] claimant will not warrant remand.").  Given that plaintiff broke both shoulders (humeri) in an ATV accident in March 2005 (*see* Tr. 485), the malunion of the fracture occurred more than a dozen years prior to the ALJ's decision.  Yet plaintiff continued to work as a medical assistant for years thereafter and did not seek any medical treatment for shoulder pain until September 2015.  Moreover, at that time she reported her shoulder "*suddenly* became painful without any known injury or overuse" a few days prior to her visit to her doctor.  (Tr. 456 (emphasis added).)

Moreover, it remains true, as the ALJ noted, that plaintiff had good range of motion and adequate strength in her upper extremities when examined by Dr. Furry in May 2016.  (Tr. 91, 532.)[7]  Indeed, Dr. Osborne found plaintiff's upper body strength to be 5/5 bilaterally.  (Tr. 475.)  Dr. Osborne also questioned whether plaintiff gave full effort on range of motion tests of her shoulders and admitted he was unable to adequately evaluate her upper extremities, an observation on which the ALJ also relied in weighing his opinions.  (Tr. 91, 472, 474).  Given the limitations he imposed, Dr. Osborne himself appears to have treated plaintiff's efforts as credible.  The ALJ,

---

[7] By contrast, at her first consultation with Dr. Furry in February 2016, plaintiff's strength was "weak" and she showed "significant active resistance" and gave "poor effort" on all tests to measure her range of motion.  (Tr. 528-529.)  Just three months later, Dr. Furry found plaintiff's strength to be "3+/5 throughout her shoulders," with active flexion and abduction of her shoulders to 90 degrees, and passive flexion of 120 degrees.  (Tr. 532.)

7

however, was not required to do likewise.  *See **Diaz v. Secretary of Health & Human Services***, 898 F.2d 774, 777 (10th Cir. 1990); ***Manning v. Colvin***, 182 F.Supp.3d 1156, 1162 (D. Colo. 2016).

Nor did the ALJ's decision to discount these proposed limitations constitute an unwarranted substitution of his lay judgment for that of a medical source, as plaintiff suggests.  *See **Hamlin v. Barnhart***, 365 F.3d 1208, 1221 (10th Cir. 2004).  The ALJ was not purporting to assert a medical opinion, but instead, to craft a residual functional capacity assessment, which is not a medical determination but an administrative one, and thus reserved to the Commissioner.  20 C.F.R. § 404.1546(c); ***Lumpkin v. Colvin***, 112 F.Supp.3d 1169, 1173 (D. Colo. 2015).  The ALJ here merely evaluated Dr. Osborne's opinion in the context of the record as a whole, which is entirely within his legitimate purview.  *See **Lopez v. Barnhart***, 183 Fed. Appx. 825, 829 (10th Cir. June 13, 2006). The supportability *vel non* of that opinion is an entirely proper consideration in determining how much weight it should be given.  20 C.F.R. § 404.1527(c)(3).

The ALJ instead gave significant weight to the opinion of the state agency physician, Dr. David Bristow, finding it largely consistent with the medical record as a whole.[8]  (Tr. 91.)  Plaintiff faults this finding on the ground that Dr. Bristow did not have the benefit of later-developed medical evidence.  The ALJ, however, did have all this evidence before him.  It was his prerogative to determine how that evidence should

---

[8] "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." **Social Security Ruling** 96-6p, 1996 WL 374180 at *2 (SSA July 2, 1996).  Although their opinions generally are entitled to less weight than those of treating and examining sources, "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."  *Id.* at *3.  *See also **Birkle v. Colvin***, 82 F.Supp.3d 1308, 1313 (D. Colo. 2015).

8

translate into the determination of residual functional capacity.

While the portions of the record to which plaintiff offers specific citation[9] do indicate instances in which her functioning was more limited (*see* Tr. 529, 535, 628), which the ALJ acknowledged (Tr. 88), the ALJ fully recounted other, substantial evidence of record which supports his conclusion that Dr. Bristow's opinion more closely matched plaintiff's true functional abilities (*see* Tr. 88-89, 91).[10] Although a more restrictive residual functional capacity might have been supportable on this record, the ALJ's contrary decision still is supported by substantial evidence. **Lax v. Astrue**, 489 F.3d 1080, 1084 (10th Cir. 2007) ("'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.'") (citation and internal quotation marks omitted); **Abdelmeged v. Colvin**, 2015 WL 5047645 at *6 (D. Colo. Aug. 26, 2015) ("The mere fact that there may be two permissible views of the evidence . . . is not indicative that the ALJ's choice between them was in error."). I thus cannot find he erred in this regard.

Plaintiff next faults the ALJ for failing to incorporate greater limitations related to her mental impairments into the residual functional capacity assessment. The ALJ limited plaintiff to work that did not require "production-rate pace work, such as assembly line work," but imposed no other restrictions on her ability to perform the

---

[9] To the extent plaintiff cites me to the entirety of the medical record following the date of Dr. Bristow's examination (*see* **Plf. Br.** at 26 (citing Tr. 502-700)), I am neither required nor inclined to scour nearly 200 pages of records in search of evidence in support of plaintiff's claims, **Abdelmeged v. Colvin**, 2015 WL 5047645 at *6 (D. Colo. Aug. 26, 2015).

[10] Although plaintiff points out that Dr. Bristow also did not have the benefit of her testimony, the ALJ specifically stated that he incorporated additional restrictions on plaintiff's ability to reach overhead based on her hearing testimony. (Tr. 91.)

9

mental demands of competitive employment. (Tr. 86.) Plaintiff asserts the ALJ therefore failed in his duty to consider the combined effect of all her impairments on her residual functional capacity. *See* 20 C.F.R. §§ 404.1523(c) & 404.1545(e).

I am unpersuaded. The Tenth Circuit has made clear that an ALJ's findings at steps two and three of the sequential evaluation need not necessarily be translated into work-related functional limitations in assessing residual functional capacity at step four. *See Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015); *Suttles v. Colvin*, 543 Fed. Appx. 824, 826-27 (10th Cir. 2013). *See also Miller v. Astrue*, 2012 WL 1388706 at *5 (D. Colo. April 23, 2012), *aff'd*, 520 Fed. Appx. 741 (10th Cir. 2013). Nevertheless, the ALJ here thoroughly considered the scant and largely unremarkable evidence related to plaintiff's mental health impairments and found it insufficient to warrant greater limitations on plaintiff's ability to work. (Tr. 89-90.)

Here again, although plaintiff points to some evidence in the record which could be read to support greater limitations, the ALJ's contrary conclusion is amply substantiated by the record. The substantial-evidence standard does not allow the court to "displace the agenc[y's]' choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax*, 489 F.3d at 1088 (citation and internal quotation marks omitted). I thus perceive no error in this regard either.

Plaintiff further maintains the ALJ erred in not giving full credence to her subjective complaints of pain and functional limitation. In general, "credibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence." *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir.

2001) (quoting **Kepler v. Chater**, 68 F.3d 387, 390-91 (10th Cir. 1995)).  So long as the ALJ links his credibility assessment to specific evidence in the record, his determination is entitled to substantial deference.  **Id.** at 910; **see also Qualls v. Apfel**, 206 F.3d 1368, 1372 (10th Cir. 2000).  The ALJ here cited to a number of considerations which caused him to discredit plaintiff's testimony.  As the majority of these reasons are well-founded, I find no reversible error in the ALJ's credibility determination.

The ALJ found plaintiff's lack of any treatment history from 2005 to 2015 and her continued employment through 2012 to be significant (and appropriate) factors in discrediting her complaints of disabling pain.  (Tr. 88.)  **See White v. Berryhill**, 704 Fed. Appx. 774, 778 (10th Cir. Oct,. 4, 2017) (minimal medical treatment);[11] **Kitch v. Astrue**, 2011 WL 4434972 at *4 (D. Colo. Sept. 23, 2011) (ability to engage in substantial gainful employment).  Plaintiff claims these reasons became null when she amended her onset date.  Of course, plaintiff only conceded to this amendment after her case reached the Appeals Council.  Nevertheless, she claims the ALJ should have perceived she could not recover for any period prior to February 1, 2012, because he noted her prior unfavorable disability decision and refused to reopen that determination.  (Tr. 80.)  I cannot agree.  Even if plaintiff was not entitled to recover for any period of time prior to February 2012, her continued insistence that she was disabled for years prior to that time, during a period in which she was working and sought no medical treatment, bears directly and substantially on her credibility.

---

[11] Plaintiff's suggestion that she did not seek medical treatment during this time because she did not have access to health care is unsupported by any evidence in the record.

11

The ALJ also relied on plaintiff's reports of grooming her parents' horses daily and attending church with her parents to discredit her subjective reports of disabling symptoms. (Tr. 88, 90.) *See Ghini v. Colvin*, 82 F.Supp.3d 1224, 1234 n.11 (D. Colo. 2015) ("[A]ctivities of daily living . . . bear on a plaintiff's credibility to the extent that the level of activity is in fact inconsistent with the claimed limitations.") (citations and internal quotation marks omitted). Plaintiff argues her hearing testimony shows her abilities to care for the horses and interact at church are more limited than the ALJ's recitation of the evidence would suggest. (*See* Tr. 134-136.) However, plaintiff's descriptions of these activities to her treatment provider were much more benign than described at the hearing. (*See* Tr. 594 (plaintiff reported "healing by living with her parents" and that she was "involved in her parents [sic] church and has 2 friends she visits regularly"), 595 (plaintiff reportedly "enjoys taking care of her parents horses" and "grooms [them] daily").) Those very discrepancies justify the ALJ's decision to find plaintiff's testimony less than entirely credible.

Lastly, plaintiff claims the ALJ should not have relied on her primary care physician's "significant concerns," early in their treatment relationship, that plaintiff might be engaging in drug-seeking behavior. (Tr. 89, 448.) Of course, a suspicion that a claimant is drug-seeking is a proper consideration in assessing her credibility, *see Poppa v. Astrue*, 569 F.3d 1167, 1171-72 (10th Cir. 2009); *Barnes v. Colvin*, 27 F.Supp.3d 1153, 1159 (D. Colo. 2014), and the ALJ could not possibly have known the doctor subsequently would retract his statement in a letter presented to the Appeals Council on review (*see* Tr. 13).

Yet even removing this rationale from the equation, the ALJ's credibility determination still is supported by substantial evidence. Despite plaintiff's insistence that infirmity in any one of the myriad reasons on which the ALJ relied requires remand, the law is to the contrary.[12] **See, e.g.**, **Abdelmeged**, 2015 WL 5047645 at *5 ("Although not all the reasons cited by the ALJ for his assessment of plaintiff's credibility are equally persuasive, his ultimate determination is well supported by the record."); **Jack v. Astrue**, 2010 WL 3615022 at *3 n.3 (D. Colo. Sept. 10, 2010) (plaintiff failed to show how error in considering evidence bearing on credibility was "more than harmless in light of the other, legitimate bases the ALJ gave for discrediting plaintiff's subjective reports of pain and limitation and the overall evidence of record"). It is only when some critical mass of the factors cited by the ALJ are found unsupportable that it becomes inappropriate to weigh the remainder. **Bakalarski v. Apfel**, 1997 WL 748653 at *3 (10th Cir. Dec. 3, 1997); **Marr v. Colvin**, 67 F.Supp.3d 1267, 1273 (D. Colo. 2014). That benchmark was not met here.

This same consideration dooms plaintiff's final allegation – that the Appeals Council erred in not considering this new evidence. Additional evidence submitted to the Appeals Council need only be considered if, *inter alia*, "there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). **See also Chambers v. Barnhart**, 389 F.3d 1139, 1142 (10th Cir. 2004); **Brown v. Colvin**, 82 F.Supp.3d 1274, 1280 (D. Colo. 2015). "Stated differently, if the ALJ's disability determination was supported by substantial evidence,

---

[12] **Allen v. Barnhart**, 357 F.3d 1140 (10th Cir. 2004), which plaintiff advances as supporting this position, is completely inapposite. The court there considered whether the ALJ's failure to make a dispositive factual determination constituted harmless error. ***Id.*** at 1145.

13

the district court's . . . task is to determine whether the qualifying new evidence upsets that decision." **Brown**, 82 F.Supp.3d at 1280 (quoting **Martinez v. Astrue**, 389 Fed. Appx. 866, 869 (10th Cir. Aug. 3, 2010)) (internal quotation marks omitted).

On this record, I simply cannot conclude that plaintiff's potential drug-seeking behavior *vel non* so fundamentally impacted the ALJ's disability decision that remand is indicated. The ALJ mentioned this consideration only once in the course of a lengthy discussion of other, entirely valid reasons for finding plaintiff's shoulder impairments less disabling than alleged, including the medical evidence of her greater functionality, her reports of spending time grooming horses, and questions regarding whether she gave full effort during the consultative examination. (**See** Tr. 89.) In that context, whether plaintiff engaged in drug-seeking behavior was a comparatively minor consideration and not plainly dispositive.

The other piece of new evidence plaintiff presented to the Appeals Council – a report from her treating doctor issued little more than two weeks before the ALJ's decision suggesting she had a "one-year history of probable peripheral neuropathy" (Tr. 18) – fares no better. Even if this diagnosis were confirmed (a proposition for which there is no evidence), the record shows plaintiff did not report or complain of neuropathic symptoms to any medical source in the twelve months prior to the ALJ's decision.[13] It therefore is unlikely the ALJ would have found the durational requirement of the Social Security Act to be met, **see** 42 U.S.C. § 423(d)(1)(A), and the disability decision therefore would have been the same.

---

[13] Nor was neuropathy one of the many impairments her counsel endorsed at the hearing. (**See** Tr. 111-112.)

14

## IV. ORDERS

For these reasons, I find no reversible error in the ALJ's disability determination, which accordingly must be affirmed.

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is affirmed.

Dated May 6, 2019, at Denver, Colorado.

BY THE COURT:

Robert E. Blackburn
United States District Judge